DIXON, Judge.
This suit arises from a collision between a motorcycle and an automobile. There was judgment in favor of the cyclist and his parents, and the defendant, Royal Indemnity Company, the insurer of the automobile involved, has appealed.
The accident occurred on the old bridge across Caddo Lake at Mooringsport, Louisiana, on a clear, dry August day in 1967. *189 The plaintiffs are the parents of Danny E. Tennis who was seventeen years old at the time of the accident. Danny and two companions were headed north on the bridge; Charles Camp was operating another motorcycle ahead of Danny Tennis, and Sue Broom was on the buddy seat of the motorcycle being driven by Danny.
The bridge is an old structure, narrow, with heavy steel superstructure that to some extent inhibits a driver’s view. At the north end of the bridge, the blacktop road darts off to the right at a fairly sharp angle. Before the motorcyclists reached the north end of the bridge, a slight accident had occurred and the road was congested.
The first vehicle headed in a southerly direction at the north end of the bridge was an oil field work truck. Behind that was a Volkswagen sedan. Behind that was a pickup truck. Behind that was the Mercury automobile driven by Diane Peterson, insured by the defendant, which was involved in the accident forming the basis of this suit.
The oil field work truck had stopped at the north end of the narrow bridge to allow other traffic to clear the bridge; when it rolled back, it collided with the Volkswagen stopped behind it. The truck came to a stop very close to the north end of the bridge.
When Diane Peterson came upon three vehicles stopped in her lane, she waited for a time, then pulled into her left lane (the northbound lane of travel), where she again came to a stop. The record shows that she was about seventy-five feet north of the north end of the bridge, in effect' blocking the remainder of the blacktop highway.
With cars in these positions, Charles Camp came off the bridge and was faced with the Peterson automobile blocking his lane of traffic. Without enough room to go between the Peterson automobile and the vehicles stopped on account of the other accident, Camp took to the shoulder on the right and was able to avoid the Peterson vehicle. His maneuver was so precarious that when he came to a stop on the blacktop, he was behind the Peterson vehicle, having reversed his direction.
A few seconds behind Camp was Danny Tennis. As he came off the bridge, he saw the Peterson vehicle, but was unable to avoid it as Camp had done, due, he said, to the decreased mobility because of the passenger on the motorcycle. He put out his arm to protect his passenger, used his foot brake, and slid into the radiator of the Peterson automobile.
Danny suffered cuts and bruises about his face and other parts of his body, a broken nose, and a compound fracture of the right tibia.
The testimony fixes the speed of Tennis’ motorcycle at twenty-five to thirty miles per hour. The record does not reflect that he could have done anything that he did not do to avoid the accident. When he came off the bridge, driving at a reasonable rate of speed, he was faced with what amounted to a trap which he could not avoid.
On the other hand, it is clear that when Diane Peterson, southbound on the blacktop road, moved her automobile into the northbound traffic lane and stopped at a short distance from the bridge where she was hidden by the curve, the bridge, and tall grass and weeds she was guilty of negligence which caused the accident.
The judgment in the district court awarded Albert T. Tennis, the father of Danny, $2,836.15 for special damages, and awarded Danny’s parents, for the use and benefit of the minor, $7,163.85. The defendant-appellant complains that $7,163.85 is grossly excessive and shocking. The policy limits here are $10,000.00.
*190 This case was tried fifteen months after the accident. Danny had been employed as a roustabout in the oil fields. He had been unable to do any work during the period between the accident and the trial, and one doctor testified that it would be about two months before he could return to oil field work. His fracture failed to heal, and he was required to undergo surgery several months after the accident, and again a few weeks before the trial. A metal plate was installed to hold the bones in place. His soft tissue had not completed healing at the time of the trial. The other injuries suffered by Danny did not cause him as much difficulty as the fractured tibia. We cannot conclude that the award of the trial court is excessive.
The judgment of the district court is affirmed at appellant’s costs.